Raymond C. ELLIS, Plaintiff,

v.

Richard A. CHAPPELL, Chairman, United States Board of Parole, et al., Defendants.

Civ. A. No. 2150–62.

United States District Court
District of Columbia.

June 3, 1964.

Joseph C. Suraci, Washington, D. C., for plaintiff.

John F. Byerly, Atty., Dept. of Justice, Washington, D. C., for defendants.

YOUNGDAHL, District Judge.

This case came on for trial by the court sitting without a jury, with plaintiff present in court and represented by appointed counsel.

Plaintiff seeks a declaratory judgment and mandatory injunction ordering his release from the U. S. penitentiary at Atlanta, Georgia, where he is currently serving a sentence of 2 years and 6 months for escape. This sentence did not begin to run until March 23, 1964, because it was ordered to be served consecutively to the time plaintiff owed as a conditional release violator under a sentence of 10 years' imprisonment for kidnapping and 5 years' probation for escape, to run consecutively, both imposed in 1952. Plaintiff was released on conditional release from the kidnapping sentence in June of 1958. He was arrested in the fall of 1958 for theft on a government reservation, and in December of 1958 he received a sentence of 4 years for this offense. At the termination of the time owed under this sentence, plaintiff began serving the time he owed as a conditional release violator under the kidnapping sentence.

■ The issue in this case is to determine when the time owed as a conditional release violator under the kidnapping sentence began to run. Plaintiff claims that it began to run in October or November of 1958, because, he alleges, the U.S. Commissioner refused to accept bond for his release because of the existence of the Parole Board warrant charging him as a conditional release violator. The Government claims, on the other hand, that plaintiff has failed to prove by a fair preponderance of the evidence that bond was refused because of the existence of the warrant for his arrest as a conditional release violator, and that even if plaintiff has proven this, nevertheless such fact would not constitute execution of the parole violator warrant because plaintiff's proper recourse was to apply to a court in 1958 for immediate release on bond and because the execution of the warrant is a matter within the sound discretion of the Parole Board.

Plaintiff was arrested in Colorado on the charge of theft on a government reservation in late September of 1958, and on October 13, 1958, his bond was set by the U. S. Commissioner for the District of Colorado in the amount of $5,000. Plaintiff could not make bond. The offense was alleged to have been committed in Missouri, and plaintiff was transferred to the Western District of Missouri, where he was convicted by pleading guilty on December 5, 1958 and was sentenced to 4 years' imprisonment. In the interim period, on October 28, 1958, the U. S. Board of Parole issued a warrant for the arrest of the plaintiff as a conditional release violator. In accord with the policy of the Board of Parole, this warrant was not "executed," but instead was lodged as a detainer at the federal institution to which plaintiff was sent to serve his sentence for theft. The warrant was "executed" by the "arrest" of the plaintiff on November 13, 1961, after he had served his time for theft.

Plaintiff claims that after he had been transferred to the jail in Kansas City, Missouri, his wife (now divorced) went with a druggist who was prepared to put up his bond to the United States Commissioner in Missouri, tendered payment of the bond, and was refused because of the existence of the Parole Board warrant for his arrest as a conditional release violator. To support this contention, plaintiff offered the deposition of his former wife. Barring inadmissible hearsay, she testified that in September or October (she was not sure precisely when) she went with the druggist to an unidentified building which she said was a "Federal building," that they went to what she "guessed" was the Marshal's office (although she later said that she did not know whose office it was or which official was present), and that the druggist said "that he had come to make bond

for Raymond Ellis, and in the conversation he was refused." She testified in a conclusory fashion "that we were refused to make bond for him because he had something about parole violation warrant" and that "He was held on this here parole violation warrant so that he couldn't make bond. They wouldn't let him out on bond." She recalled no further conversation with the Federal official, and testified: "We just left then because there wasn't anything we could do."

In addition to his wife's deposition, plaintiff offered the transcripts of proceedings in the United States District Court for the Western District of Missouri on October 31 and December 5, 1958. On October 31, at arraignment, the court asked his attorney if Ellis had been able to make bond. His attorney replied: "Not yet. There is a C. R. warrant on him. I fear he will not be able to make bond." The Assistant U. S. Attorney then stated that the Marshal had just told him that a conditional release violation warrant had been received that same morning. On December 5, 1958, Ellis appeared before the court to plead guilty. He stated to the court that he wanted to plead guilty, and added: "They would not accept a bond for me and there was just nothing I could do to help myself." His attorney then explained what Ellis meant by this statement:

"Mr. Ellis is on conditional release from the penitentiary at Leavenworth, and his statement means that he had hoped to make bond in an effort to go out and try to find another party who was a party to this offense, and in some way help himself at the time of the C. R. violator's hearing. *There has been no arrest, or anything, it is just the fact if he doesn't come on and plead guilty at the present time, he is just postponing the day that the C. R. violation will be filed against him.*" (Emphasis added.)

■ Finally, plaintiff himself took the stand to testify. He said that he exchanged three or four letters with the druggist in regard to bond, and that the druggist (as well as a professional bondsman) told him that bond was refused because he was a parole violator. The latter statement, of course, is inadmissible as hearsay.

In the course of his testimony, plaintiff conceded that he had raised the same issue that he is raising in the present case in a petition for a writ of habeas corpus which he filed in Michigan, and that the application for the writ was dismissed by the court.

The defendants represented to the court that there are no records of the former United States Commissioner for the Western District of Missouri covering the period in question and that the former Commissioner himself is in a nursing home and is therefore unable to testify. The druggist is deceased.

■ On the basis of the above testimony, this Court has concluded that plaintiff has failed to prove by a fair preponderance of the evidence that bond was tendered for him to an appropriate official, or that if it was so tendered, that it was refused because of the existence of the Parole Board warrant. Plaintiff's allegations must stand or fall on the basis of the wife's testimony. Her testimony is not sufficient to carry plaintiff's burden because she did not know to which official the druggist talked, and indeed thought it was the U. S. Marshal, an official without authority to release a prisoner on bond. In addition, her statements about the refusal of bond because of the existence of the Parole Board warrant are merely conclusions on her part, not supported by any testimony even purporting to be a statement to that effect by the official with whom the druggist was talking. Finally, her rough estimate of the dates involved in her first meeting with the druggist and their eventual presence at the "Federal building" would place these events in September or October, 1958, whereas the transcript of the October 31, 1958, arraignment indicates that the Parole Board warrant was only received on the morning of October 31—thus either casting doubt on the credibility of

the wife's testimony, or indicating that her memory of the events is extremely hazy. In these circumstances, plaintiff has failed to carry his burden of proof.

█ Even assuming *arguendo* that plaintiff had carried his burden of proof on the factual issue, the Court agrees with the defendants' position that the mere fact that a prisoner is denied bond because of the existence of a Parole Board warrant for his arrest as a conditional release violator does not mean that the warrant should thereby be considered "executed." Congress has specifically provided that "The unexpired term of imprisonment of any such prisoner [who has violated his parole] shall begin to run from the date he is returned to the custody of the Attorney General *under said warrant* [issued only by the Board of Parole or a member thereof] * * *." 18 U.S.C. § 4205. [Emphasis added.] Plaintiff was not returned to the custody of the Attorney General under the warrant charging a violation of his conditional release until the warrant was served on him on November 13, 1961, after he had served his time for theft. The mere existence of the warrant does not amount to execution of the warrant. Johnson v. Wilkinson, 279 F.2d 683 (5th Cir. 1960); Teague v. Looney, 268 F.2d 506 (10th Cir. 1959); Groce v. Hudspeth, 121 F.2d 800 (10th Cir. 1941). And see Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938). Even if the U. S. Commissioner refused to release plaintiff on bond solely because of the fact that a parole violator warrant was outstanding—which the Goverment concedes would have been error on the part of the Commissioner—that fact does not mean that plaintiff was "returned to the custody of the Attorney General under said warrant." 18 U.S.C. § 4205. He was simply erroneously refused bail, and his remedy was to seek release on bond from the U. S. District Court for the Western District of Missouri, and, if necessary, to appeal any improper refusal to grant said release. These remedies were clearly open to plaintiff. See Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed.

3 (1951); United States v. Foster, 278 F.2d 567 (2d Cir. 1960). There is no indication that plaintiff ever sought to request any court to overturn the Commissioner's alleged refusal to release him on bond; plaintiff cannot fail to pursue a remedy which was then available and wait until years later to challenge his confinement as a conditional release violator on the theory that failure to release him on bond constituted execution of the Parole Board warrant. Plaintiff had a remedy, but it is not the one he seeks at this belated date in this lawsuit.

Judgment will therefore be entered for defendants.

This memorandum shall be considered as findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.