**UNITED STATES of America**
v.
**Gerald John GILLIN.**
**No. 72–G–24.**

United States District Court,
S. D. Texas,
Houston Division.
July 5, 1972.

Anthony J. P. Farris, U. S. Atty., and Henry J. Novak, Asst. U. S. Atty., Houston, Tex., for plaintiff.

James M. Pape, of Saccomanno, Clegg, Martin & Kipple, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

NOEL, District Judge.

Defendant, Gerald John Gillin, seeks a court-ordered reduction in his bail-bond, set at $75,000 in money or security, pursuant to 18 U.S.C. § 3147(a) (1970). The federal grand jury has indicted defendant on charges of violating Sections 1952, 1510, 1503, and 924(c) (1) (two counts) of Title 18, United States Code. The charges relate to the alleged threatening of a government witness at gunpoint in Galveston, Texas, following an airplane flight from San Diego, California, to Galveston. Upon his arrest in San Diego, Gillin was arraigned before a United States Magistrate who set bond at $75,000. Upon his return to the Southern District of Texas, defendant was given two oral hearings before a magistrate on his request for a reduction of bond. 18 U.S.C. § 3146(d) (1970). The magistrate denied defendant's request. He has renewed his motion here.

Sections 3146 and 3147 are the core of the Bail Reform Act of 1966 meant to "revise the practices relating to bail to assure that all persons, regardless of their financial status, shall not needlessly be detained pending their appearance to answer charges, to testify, or pending appeal, when detention serves neither the ends of justice nor the public interest." Pub.L. 89–465, § 2 (June 22, 1966) 80 Stat. 214. The Act favors release of the individual under the minimal conditions required to "reasonably assure the appearance of the person as required." § 3146(a), Brown v. United States, 392 F.2d 189 (5th Cir. 1968). A two-step test is envisioned in which the judicial officer must first determine whether release on personal re-

cognizance or upon the execution of an unsecured appearance bond will assure appearance. United States v. Cramer, 451 F.2d 1198 (5th Cir. 1971). If this appears inadequate, the officer must determine what conditions of release would serve the desired purpose. The execution of a bail bond is the least desired condition because it discriminates against the poor in contravention of the purpose of the Act. United States v. Leathers, 134 U.S.App.D.C. 38, 412 F.2d 169 (1969). Thus the decision by the magistrate to impose a substantial money bond as a condition of release can be made only after rejecting all alternatives as being insufficient to reasonably assure the appearance of the individual.

On June 21, this Court set defendant's case for trial on July 24 and heard his motion for a reduction of bond. After a review of the record in light of the guidelines of the Act, this Court concludes that the magistrate was correct and the required bond should remain at $75,000.

Subsection (b) of § 3146, quoted in the margin[1], details factors to be considered in reviewing conditions for release.

██ The first factor, the nature and circumstances of the acts charged, militates against a reduction in bond. In essence, Gillin is charged with flying from San Diego to Galveston, under an alias, and there threatening a government witness at gunpoint in an effort to prevent his testimony in a narcotics case. The five separate offenses for which Gillin has been indicted could result in imprisonment for a total of 35 years and fines of $20,000. Compare, United States v. Van Caester, 319 F. Supp. 1297 (S.D.Fla.1970). The charged

crimes are of a violent nature involving a premeditated, calculated plan to disrupt the judicial process. See, United States v. Gilbert, 138 U.S.App. D.C. 59, 425 F.2d 490 (1969). The use of an alias and the large number of fake identification cards found in Gillin's apartment are also relevant here. It would appear that Gillin has both the motive and the ability to flee prosecution were he released without stringent conditions providing him a substantial motivation to appear for trial.

The evidence which the Government has identified in support of its case is substantial. The victim of the threats has identified Gillin. A paper at Gillin's residence has the victim's name on it. Other evidence indicates Gillin flew to Galveston on the day in question.

Several factors mentioned in the statute involve ties to the community which might provide some assurance of a defendant's appearance at final trial. None of these are present here. Defendant's only family ties are parents who reside in Connecticut, not California the last residence of Gillin. Compare, United States v. Kirkman, 426 F.2d 747 (4th Cir. 1970). Defendant claims self-employment in California but there is no other evidence of regular employment at any particular location. United States v. Alston, 136 U.S.App.D.C. 334, 420 F. 2d 176 (1969). His character and mental condition are evidenced only by multiple arrests in the past few years involving drug and weapons offenses and driving violations. Allen v. United States, 128 U.S.App.D.C. 207, 386 F.2d 634 (1967). On three occasions, Gillin had assumed an alias when arrested. He obtained identification under various names because, he says, California had

cused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings."

suspended his license but he had to keep driving. While Gillin is not on trial for past offenses, the pattern of his record for frequent use of aliases is significant here.

The length of defendant's residence in the community is of no aid to Gillin. He, of course, does not live either in the Houston or Galveston area. His ties to San Diego are tenuous. He claims three years residence, yet he offered no employment records or other evidence which would indicate significant roots to that community. Hodge v. United States, 414 F.2d 1040 (9th Cir. 1969).

The final factor for consideration, his record of appearance in court proceedings, does support defendant's motion. There is no record of his ever having failed to appear as required. Wood v. United States, 129 U.S.App.D.C. 143, 391 F.2d 981 (1968). While relevant, this fact is not overly persuasive when it is recognized that Gillin has never before faced charges so serious as here. In addition, defendant's use of an alias on his round-trip flight to Galveston evidences a willingness and an ability to flee from possible prosecution.

In summary, defendant is charged with a calculated, dangerous attempt to interfere with the judicial process. He does not have the substantial ties or contacts with a community which would justify concluding that conditions less than a substantial money bond will assure his appearance. On the contrary, it is not unreasonable to assume that he might seek to avoid prosecution. The one factor in his favor, that he has never failed to appear at a court proceeding, does not outweigh the other factors.

Defendant has suggested two different plans for release. Both would require a nominal cash deposit and a weekly call-in at San Diego. The supervision involved in these plans is negligible and would provide a six-day headstart if defendant fled. Compare, United States v. Alston, 136 U.S.App.D.C. 334, 420 F.2d 176 (1969). The nominal money deposit would not provide an adequate stake in insuring defendant's appearance.

Accordingly, defendant's motion for the reduction of bond is denied and present conditions for pre-trial release are continued.